# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEMEATRUS ROBINSON, SR.,** | 1:18-cv-00042-LJO-BAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| **HUNGER FREE AMERICA, INC. A New York not-for-profit corporation, et al.,** | **(Doc. 19)** |
| Defendants. | **ORDER DENYING PLAINTIFF'S MOTION FOR A 60-DAY STAY OF PROCEEDINGS** |
| | **(Doc. 24)** |

## I. INTRODUCTION

Pending before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC") and Plaintiff's motion for a 60-day stay of proceedings so that he may attempt to retain counsel. For the reasons set forth below, the Court DENIES Plaintiff's motion for a stay of the proceedings and GRANTS Defendant's motion to dismiss.[1] For the reasons set forth below, Plaintiff's complaint is dismissed with prejudice.

---

[1] Plaintiff filed a complaint against New York Coalition Against Hunger, Christopher G. Karagheuoff, and Joel Berg. Hunger Free America, Inc., was erroneously sued as "New York Coalition Against Hunger," and Christopher Karagheuoff, and Joel Berg were never served. Hunger Free America, Inc., removed the case to this court where it proceeds as the only defendant served.

1

## II. FACTUAL BACKGROUND

From what can be gleaned from Plaintiff's complaint, Hunger Free America, Inc. was founded in 2010 by Plaintiff.[2] Hunger Free America, Inc. owns a registered trademark No. 5,297,297 (" '297"), and designs, develops, manufactures, and distributes T-shirts. The '297 trademark is used for apparel, goods, and services. (FAC, ¶ 13.) Plaintiff alleges that he received the trademark for t-shirts and graphics, but that it also gave him "a partial right to use the standard character." (FAC, ¶ 14.) Plaintiff alleges he has been using the standard character "Hunger Free America" since June 24, 2011. (FAC, ¶ 14.)

Defendant[3] contacted Plaintiff at some point in 2016 to notify Plaintiff that Defendant's board had just voted to use the name "Hunger Free America." (FAC, ¶ 14.) "Defendant wanted to know if Plaintiff would give them his facebook URL or if not Defendant would simply go around him to get it." (FAC, ¶ 14.) On September 26, 2017, Plaintiff mailed a certified letter of cease and desist to Defendant and its board of directors. (FAC, ¶ 14.)

Plaintiff also asserts the following:

> After checking USPTO registration[,] Plaintiff found Defendant had resuscitated their Service Mark which had been dead since May 10, 2016. Hunger Free America, Inc. [i]s currently registered in the State of California and the Internal Revenue Service and is in good standing. Plaintiff has conducted a national search of registries for ownership of Hunger Free America, as well as, internet search before using the standard character Hunger Free America[] which revealed no ownership prior to 2010, which allows Plaintiff common law rights and now exclusive rights through USPTO.

(FAC, ¶ 15.)

Plaintiff alleges that Defendant's use of the standard character "Hunger Free America" in commerce is "likely to cause customer confusion or to cause mistake or to deceive [as] to the origin of

---

[2] Plaintiff asserts the corporation was "federally" incorporated in February 2010. A California Secretary of State record shows Plaintiff's original entity, Hour of Truth Ministry, Inc., amended its corporate name to "Hunger Free America, Inc." in 2016. (*See* Doc. 19-2.) This document was attached to Plaintiff's original complaint. (Doc. 1, p. 55.)

[3] Defendant is a non-profit corporation, originally founded as New York City Coalition Against Hunger. It adopted its name, Hunger Free America, Inc. in early 2016.

2

the products and services offered and sold by Defendant and as to their affiliation, connection, or association with and/or endorsement or approval of Plaintiff." (FAC, ¶ 21.) Plaintiff's (former) attorney informed him "that his trademark registration blocked [Defendant]." (FAC, ¶ 14.)

The FAC purports to allege a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114, a common law infringement claim, and a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code §12700. Defendant filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare

assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. ANALYSIS

**A.  Plaintiff's Motion to Stay Proceedings is DENIED**

Plaintiff filed a motion to stay this case for 60 days so that he may attempt to retain counsel. Plaintiff has had ample opportunity to seek representation. Plaintiff's complaint, which was originally filed in Fresno County Superior Court in December 2017, alleges he first became aware of Defendant's use of "Hunger Free America" in 2016. Thus, Plaintiff has known of the facts of Defendant's allegedly infringing conduct for nearly two years and, during this time, has had more than sufficient opportunity to seek the advice of and/or retain counsel. It is Plaintiff who initiated this suit, and did so more than six months ago. Plaintiff's motion for a stay of proceedings to search for counsel is DENIED.

**B.  Plaintiff May Not Add Hunger Free America, Inc. as a Plaintiff**

Plaintiff's original complaint was filed in his individual capacity, "doing business as" Hunger Free America, Inc. (Doc. 1, p. 18.) Plaintiff has impermissibly added Hunger Free America, Inc. as a plaintiff with neither the permission of the Court nor a stipulation of the parties pursuant to Federal Rule of Civil Procedure 15. Plaintiff may not add a new party as a matter of right. Additionally, corporate or other artificial entities, such as Hunger Free America, Inc., require licensed attorney representation to appear in federal court. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993)

4

(noting that 28 U.S.C. § 1654 does not allow corporations, partnerships, or associations to appear in federal court other than through a licensed attorney). To the extent Plaintiff seeks relief on behalf of Hunger Free America, Inc., he is prohibited from doing so as a non-attorney. *Id.* For these reasons, Plaintiff may not amend the complaint to add Hunger Free America, Inc. as a Plaintiff.

**C. Plaintiff Fails to State A Cognizable Trademark Claim**[4]

Neither Plaintiff's trademark infringement claim under the Lanham Act nor his common law trademark infringement claim is viable for the same reasons set forth in the Court's order dismissing the original complaint. After explaining the pleading requirements for both a federal trademark infringement action under the Lanham Act as well as under state law, the Court explained that any amended complaint must address the following deficiencies:

> Plaintiff must allege facts showing how there is a likelihood of confusion with Defendant's use of [its] "Hunger Free America" mark pursuant to the *Sleekcraft* factors. If Plaintiff's claim is predicated on an unregistered mark broader than that in the '297 Registration, Plaintiff must also plead a valid, protectable trademark by showing that he was the first to use the mark in the ordinary course of trade, and that his use of the mark was distinctive. [citations omitted].

(Doc. 13, 9:14-19.) Plaintiff has failed to cure the defects in his original complaint.

To state a claim for trademark infringement under either the Lanham Act or for common law trademark infringement, a plaintiff must allege that (1) he has a valid, protectable trademark right; (2) that was used by defendant; (3) in a way that is likely to cause consumer confusion and thus infringe upon the trademark right. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). As the elements for both claims overlap, they are analyzed together. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013,

---

[4] Plaintiff submitted an untimely opposition brief, which is unsigned.

1031 (C.D. Cal. 2011).

To show a valid, protectable trademark interest, registration of a mark is prima facie evidence of the exclusive right to use that mark on the goods and services specified in the registration. 15 U.S.C. §§ 1057(b); 1115(a); *Brookfield Commc'n, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). While Plaintiff has sufficiently alleged registration of the '297 mark, which is limited to t-shirts, Plaintiff has not pled any facts showing that he actually used the mark covered by the '297 Registration or the standard character "Hunger Free America" prior to any use by Defendant.[5] *Sengoku Works, Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (to acquire ownership of a trademark, "[i]t is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Although Plaintiff summarily alleges he has used the standard character "Hunger Free America" in commerce since 2011, he does not specify what products or services he has sold since 2011 bearing, or sold in conjunction with, that standard character. As noted by Defendant, Plaintiff's corporation name "Hunger Free America, Inc." was not adopted until 2016. Prior to that time, Plaintiff's corporate entity was named "Hour of Truth Ministry, Inc.," and it is not clear what goods or services were sold by that entity or what particular mark was used in conjunction with those sales. (*See* Doc. 19-2 (California Secretary of State filing).) For purposes of the Lanham Act trademark claim, Plaintiff has alleged a registered mark, but it is unclear when he sold products in conjunction with the use of that mark.

Most importantly, for purposes of both Plaintiff's infringement claims, Plaintiff has not adequately alleged a likelihood of confusion through Defendant's use of either the mark delineated in the '297 Registration or the use of the standard character "Hunger Free America." The likelihood of confusion is the pivotal element of trademark infringement, and the "issue can be . . . cast as the

---

[5] As discussed in the Court's last order, the '297 Registration mark covers a specific design consisting of the words "Huger Free America" in green lettering with black and white outlining, below a background of farm rows and vegetables. The graphic mark is limited to t-shirts. See United States Patent and Trademark Office, Trademark Electronic Search System ("TESS"); http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:4wwulv.2.3

determination of whether 'the similarity of the marks is likely to confuse customers about the source of the products'" or services. *GoTo.com, Inc. v. Walt Disney Co.* 102 F.3d 1199, 1205 (9th Cir. 2000) (internal citation omitted). The Ninth Circuit recognizes an eight-factor test, set out in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003), to determine whether a defendant's use of a mark or name creates a likelihood of confusion. The factors are (1) the strength or distinctiveness of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) types of goods and degrees of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) the likelihood of expansion into other markets. *Sleekcraft*, 599 F.2d at 348. These factors are non-exhaustive and should be applied with flexibility. *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011); *Dreamwerks Production, Inc. v. SKG Studio*, 142 F.3d 1127, (9th Cir. 1998) (*Sleekcraft* factors should not be rigidly weighed; they are not a score-card, a bean counter, or a checklist).

The FAC alleges broadly that Plaintiff has developed and operates one of the most "successful feeding programs for low income families and homeless people in the Central Valley," and that "Hunger Free America[]" has developed a variety of programs for the people and implements 'hope' where there has been no hope." (FAC, ¶¶ 2, 3.) Plaintiff also alleges he designs, develops, manufactures, markets and distributes t-shirts. (FAC, ¶ 13.) As for the '297 Registration mark, Plaintiff does not allege that Defendant utilized this mark in any manner, or that anything Plaintiff sells with this mark is similar to a mark utilized by Defendant or marketed to the same class of customers as Plaintiff. *Brookfield*, 174 F.3d at 1054 (similarity of the marks is a critical question in the likelihood-of-confusion analysis). As it pertains to any use by Defendant of the standard character "Hunger Free America," the same is true. Plaintiff operates his business in California, while Defendant provides anti-hunger and anti-poverty services nationally. Plaintiff's general allegation that he manages one of the most successful feeding programs for low income people is bereft of any facts showing what services

or goods Plaintiff sells or offers beside t-shirts, or how these are similar to the services and goods offered by Defendant. *Id.* (similarity of marks, relatedness of services, and use of a common marketing channel are "controlling troika in the *Sleekcraft* analysis"). There is also no indication Defendant's use of "Hunger Free America" caused Plaintiff's customers any confusion. Plaintiff has not alleged facts showing that any of the *Sleekcraft* factors indicate a reasonably prudent customer is likely to be confused by Defendant's use of "Hunger Free America" or the '297 Registration mark in its online content, logo, or materials.

**B.     Plaintiff's Third Cause of Action under California's Unfair Competition Law ("UCL")**

The FAC impermissibly includes a new UCL claim without leave of court or stipulation of the parties under Federal Rule of Civil Procedure 15. Notwithstanding this issue, the UCL claim is not viable. California's UCL "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, et seq.). Each prong – fraudulent, unfair, and unlawful – is independently actionable. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

Under the UCL, an "unlawful" practice includes all business practices "forbidden by law." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838 (1994). The UCL provides a cause of action for violations of any other law as an unlawful practice. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). As such, a UCL claim under the unlawful prong is dependent on an underlying offense. The "unfair" prong of the UCL requires conduct that threatens "an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187. The UCL's "fraudulent" prong requires a plaintiff "show deception to some members of the public, or harm to the public interest," *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.* 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001), or to allege "members of the public are likely to be

deceived," *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

The FAC lacks any facts showing an unlawful, unfair, or fraudulent business practice to support a UCL claim. Not only does Plaintiff fail to articulate under what prong he states his claim, there are no facts alleged supporting a violation of the UCL under any of the three prongs. There is no underlying cognizable claim of unlawful conduct as it pertains to Plaintiff's trademark infringement claims, which is required. *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180. Although Plaintiff alleges his mark is "famous"[6] under the Lanham Act, and that Defendant took unspecified "unlawful actions" after Plaintiff's mark became famous to deliberately and willfully trade on Plaintiff's reputation and dilute Plaintiff's mark, these allegations are entirely conclusory and allege no facts showing what Defendant actually did or how Defendant used a mark or traded on Plaintiff's reputation or diluted any mark of Plaintiffs.

There are also no allegations of unfair or fraudulent business practices. Plaintiff alleges only that Defendant's conduct was "unlawful, unfair, and fraudulent" and it caused harm to Plaintiff. (FAC, ¶¶ 35-36.) These conclusory allegations are entirely insufficient under the basic pleading standards of Federal Rule of Civil Procedure 8 to provide Defendant any notice of what conduct allegedly wronged Plaintiff. Additionally, UCL claims grounded in fraud require *heightened* specificity in pleading under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."). The FAC allegations of a violation of the UCL are entirely lacking.

---

[6] In 1995, Congress amended Section 43 of the Trademark Act of 1946, 15 U.S.C. §1125, to provide a remedy for the "dilution of famous marks." The FAC does not allege a viable dilution claim, which is predicated on the lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the likelihood of confusion. A party alleging dilution is required to show, among other things, that the mark is famous – i.e., so prominent and renowned as to be a household name. *See Jada Toys, Inc. v. Mattell, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008). There are no facts showing that any mark or standard character at issue in the FAC is famous.

9

As with the original complaint, there are no viable claims alleged in the FAC. Plaintiff has been given notice of the deficiencies of his complaint, has had opportunity to cure the defects, but remains unable to marshal any facts necessary to state a cognizable claim. For all the reasons stated above, the FAC is dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with prejudice; and
2. The Clerk of Court is DIRECT to close this case.

IT IS SO ORDERED.

Dated: **June 4, 2018**     **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE